FILED

2026 Mar-12  PM 01:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

**ANTONIO VAZQUEZ-RANGEL,**

    **Petitioner,**

**v.**

**JONATHON HORTON,** ***et al.*,**

    **Respondents.**

    **Case No.: 1:26-cv-302-HDM-JHE**

**ORDER**

Before the court is Petitioner Antonio Vazquez-Rangel's Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction. (Doc. 3). For the reasons set forth below, the court **DENIES** the motion and **REFERS** the remainder of the Petition for Writ of Habeas Corpus, (doc. 1), to the Magistrate Judge for adjudication.

## I.    BACKGROUND

Petitioner Antonio Vazquez-Rangel ("Vazquez"), a native of Mexico, (doc. 1-1), entered the United States without inspection or apprehension at some point in either 2000 or 2003, (doc. 1, ¶¶ 23, 31, 46). On an unknown but recent date, he was stopped by law enforcement officers with the Jackson Gap Police Department and detained in connection with a traffic infraction. (Doc. 1, ¶ 46). He was subsequently transferred to the Pickens County Detention Center in Carrollton, Alabama, where

Immigration and Customs Enforcement ("ICE") later assumed custody. *Id.* Vazquez was then transferred to the Etowah County Detention Center. *Id.*, ¶ 34.

On February 19, 2026, Vazquez was granted voluntary departure by the Department of Homeland Security ("DHS"). (Docs. 10, 10-1). Under this grant of voluntary departure, he was required to depart the United States on or before April 19, 2026. *Id.* The Addendum to DHS Form I-210 – Alien Declaration, allegedly signed by Vazquez on February 19, 2026, provides that he "knowingly, voluntarily, and intelligently waive[s] [his] opportunity to file any and all applications for relief or protection from removal, deportation, or exclusion under the immigration laws." (Doc. 10-1 at 3).

Notwithstanding the above waiver, on February 20, 2026, while detained at the Etowah County Detention Center, Vazquez commenced this action by filing a Petition for Writ of Habeas Corpus. (Doc. 1). On February 24, 2026, he then filed an Emergency Motion for Temporary Restraining Order ("TRO"), (doc. 3), and Motion for Order to Show Cause, (doc. 4). The next day, the court issued an order setting a deadline for Vazquez to serve the Respondents, a briefing schedule, and hearing. (Doc. 6).

On February 26, 2026, Vazquez departed the United States. (Doc. 10 at 2). At that time, he was no longer in the custody or control of the Respondents.

On February 27, 2026, Respondents appeared and filed a Motion to Dismiss. (Doc. 10). In their motion, which the court construes as responsive to Vazquez's TRO motion, Respondents argue that the TRO motion is moot because, since Vazquez is already out of the United States and out of the Respondents' custody, it would be impossible for the court to grant any effective relief. *Id.* at 2. On March 9, 2026, Vazquez filed a reply in support of his TRO motion. (Doc. 14). In his reply, Vazquez asserts he did not knowingly and voluntarily sign Form I-210, and that he was involuntarily removed from the country. *Id.* at 3. Vazquez further argues that jurisdiction attaches at the time a habeas petition is filed, and the court does not lose jurisdiction if the petitioner is removed from the district. *Id.* at 4–6.

On March 9, 2026, the court held a hearing on Vazquez's TRO motion. *See* Rough Transcript of March 9, 2026, Videoconference ("Tr.") at 1. Consistent with their prior submissions to this court, Respondents argued that Vazquez's TRO motion is moot since he is no longer in ICE custody or in the United States. *See id.* at 7–9.

## II.    LEGAL STANDARD

### A.    Jurisdiction

District courts have authority to grant writs of habeas corpus, which may be issued to a petitioner who demonstrates that he is in custody in violation of the Constitution or laws of the United States. See 28 U.S.C. § 2241(a), (c). "Habeas is

at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). A district court's authority to grant writs of habeas corpus extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

This court has jurisdiction here because Vazquez was detained in the Northern District of Alabama at the time he filed his habeas petition. (Doc. 1). That Vazquez has since been transferred outside the district does not divest the court of jurisdiction. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

### B.    Temporary Restraining Order

Pursuant to Federal Rule of Civil Procedure 65, the court may enter a preliminary injunction or a temporary restraining order. *See* Fed. R. Civ. P. 65. To obtain either form of relief, a party must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *accord Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir. 2011).

### III.   ANALYSIS

Vazquez's Petition for an *ex parte* temporary restraining order is due to be denied for two reasons: (1) he is seeking such a remedy for something the court

4

cannot provide, namely an expedited final adjudication on the merits of his underlying habeas petition, and (2) the TRO motion is effectively rendered moot by the fact that Vazquez is neither in the custody of Respondents nor in the United States.

Although a TRO is part of the toolbox available to litigants, *see* Fed. R. Civ. P. 65(b), it "is an extreme remedy to be used only with the utmost caution," *Levine v. Comcoa Ltd.*, 70 F.3d 1191, 1194 (11th Cir. 1995) (Hill, J., concurring), because it is at odds with our nation's fundamentally adversarial legal system, *see, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 696 (1984). Accordingly, a movant must satisfy both substantive and procedural requirements before a court may take such an extreme step. Substantively, a movant is only entitled to a TRO if he or she can demonstrate all of the following: (1) a substantial likelihood of success on the merits of the underlying suit, (2) a TRO is necessary to prevent irreparable injury, (3) the threatened injury to the movant outweighs the harm to the nonmovant, and (4) a TRO would not be averse to the public interest. *Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001). Procedurally, a court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if" the petitioner includes:

> (A)  specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage

will result to the movant before the adverse party can be heard in opposition; and

(B)    the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). Vazquez's motion is plagued by substantive flaws that prevent the issuance of a TRO.

One of the lodestar principles of TROs—and, indeed, the determinative point for Vazquez—is that such an extraordinary remedy "should not be used to rule on [a case's] final, merits question." *Bueso v. Noem*, No. 3:25-cv-1505, 2025 WL 3707316, at *2 (W.D. La. Dec. 22, 2025). For decades, courts at every level of the federal judiciary have emphasized that TROs "do not conclusively resolve legal disputes," *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025), because they are intended "merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The Eleventh Circuit has held that "[o]ne inherent characteristic of a temporary restraining order is that it has the effect of merely preserving the status quo rather than granting most or all of the substantive relief requested in the complaint." *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982) (citations omitted). This court, following Supreme Court precedent, has similarly held that "[e]x parte TROs 'should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer.'"

6

*Sensible Loans Inc. v. Bloc Indus. Inc.*, No. 5:20-cv-1512, 2022 WL 17541011, at *2 (N.D. Ala. Dec. 8, 2022) (quoting *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974)). Thus, a TRO is—at most—a waystation on the road to a final resolution on the merits and not the vehicle for such a final adjudication in and of itself. Put simply, if a court is confronted with a petition and ruling in the petitioner's favor would dispose of the case on the merits in its entirety, that petition is not substantively seeking a TRO, regardless of the petitioner's label. There is perhaps no more succinct articulation of this point than that offered by the Eastern District of California: "Where a petitioner simply repeats the basis for his petition for writ of habeas corpus as grounds for preliminary injunctive relief, petitioner does not present a basis for the court to issue any form of preliminary relief. Such a motion should be denied." *Brisette v. Arnold*, No. 2:16-cv-208, 2016 WL 1670559, at *1 (E.D. Cal. Apr. 27, 2016), *report and recommendation adopted* No. 2:16-cv-208, 2016 WL 3351549 (E.D. Cal. June 16, 2016).

Applying this principle in the context of habeas cases, courts within the Eleventh Circuit[1] routinely hold that a petitioner's motion for a TRO must be denied if it merely seeks "to obtain the affirmative relief sought in the Petition on an

---

[1] This court considers such opinions to be persuasive authority. *See, e.g.*, *Daniel v. Huntsville City Bd. of Educ.*, No. 5:16-cv-1919, 2017 WL 1282319, at *4 (N.D. Ala. Apr. 6, 2017).

expedited basis, rather than preserve the status quo" until a subsequent adjudication on the merits of a habeas petition. *Malave v. Noem*, No. 3:26-cv-253, 2026 WL 352908, at *1 (M.D. Fla. Feb. 9, 2026). The court finds *Erazo v. Hardin*, No. 2:25-cv-891, 2025 WL 2879509 (M.D. Fla. Oct. 9, 2025), to be particularly instructive here. In *Erazo*, the petitioner was an alien in ICE custody who filed a petition for a writ of habeas corpus asking that the court grant him a bond hearing before an immigration judge or, alternatively, order his immediate release, *id.* at *1, all of which is true for Vazquez. The Middle District of Florida denied his petition for a TRO:

> Equally problematic is the relief Erazo seeks [in his TRO petition]. "The purpose of a temporary restraining order . . . is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo*, 403 F.3d at 1231. Erazo does not seek to maintain the status quo but rather to obtain (immediately) the ultimate relief sought in the habeas petition. "[R]elief altering the status quo rather than maintaining it is routinely denied by courts." *Goldstein v. Nat'l Collegiate Athletic Ass'n*, No. 3:25-CV-00027-TES, 2025 WL 581333, at *2 (M.D. Ga. Feb. 20, 2025); *Ludy v. Dozier*, No. 1:18-CV-165 (WLS), 2019 WL 13434824, at *1 (M.D. Ga. Oct. 25, 2019) (denying injunction where it "would alter the status quo and provide [the movant] the relief he seeks before the Court is able to adjudicate this case on the merits").

8

*Id.* (emphasis added). *Erazo* is but one example of cases in which a court denies a petitioner's motion for an *ex parte* TRO because he offers the same arguments and seeks the same ultimate relief as his complaint.[2]

To further underscore that TROs are, by their very nature, not to be used to afford final relief on the merits, it is instructive to consider the inverse of *Erazo*, i.e., a habeas case in which the court *did* issue a TRO. In *Rosamilia v. Mina*, a very recent case also from the Middle District of Florida, the petitioner filed a petition for a writ of habeas corpus challenging his detention in the jail of Orange County, Florida. No. 6:26-cv-209, 2026 WL 205641, at *1 (M.D. Fla. Jan. 27, 2026). Included in the habeas petition was a request for a TRO "to prevent imminent transfer" to ICE custody. *Id.* The court granted the TRO and enjoined ICE from removing the petitioner from the county jail and into its own custody until the matter could be fully briefed. *Id.* at *3. In granting the TRO, the court did not rule on the merits of the underlying habeas petition because it could not, as the purpose of the TRO was solely to enforce the status quo and tee up a later adjudication.[3] Thus, *Erazo* and

---

[2] It is not just the Eleventh Circuit: courts around the nation hold that the "purpose of a preliminary injunction is not to give the plaintiff the ultimate relief it seeks." *WarnerVision Ent., Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996).

[3] The court should not be understood as holding that the process for granting a TRO precludes consideration of the merits. Indeed, the Eleventh Circuit has explicitly held that such an order requires a court to find, among other things, that the movant is substantially likely to succeed on the merits of his or her claim. *See, e.g.*, *Swain v. Junior*, 961 F.3d 1276, 1284 (11th Cir. 2020). However, the context in which the merits are considered makes all the difference in the world: if the petitioner is arguing success on the merits as warranting relief in and of itself, he or she is not seeking a TRO, but, rather, an ultimate disposition of the case in his or her favor. If, on the other

*Rosamilia* jointly typify the principle that TROs are not to be used as a procedural Trojan Horse for securing a rapid adjudication on the merits any time the movant so desires: they are solely to preserve the status quo *until* such a determination. It is precisely this standard that Vazquez fails to meet.

The substance of Vazquez's motion as a whole makes clear that Vazquez believes—contrary to all the law cited *supra*—that he can secure an expedited resolution of his petition for a writ of habeas corpus by filing a petition for a TRO on identical grounds. In his motion, Vazquez focuses on the merits of his underlying habeas petition, i.e., his arguments as to why "Petitioner should not be detained and should immediately be released." *Id.* at 2. Any fair reading of this motion makes clear that the ultimate relief Vazquez seeks is either a release from custody altogether or a bond hearing: the arguments, authority, and allegations in the motion point towards one of these two goals, not some intermediate pause of the status quo in preparation for a later determination on the merits, which would be a proper basis for a TRO. *See Sensible Loans Inc.*, 2022 WL 17541011, at \*2.

The court finds the motion to be a reassertion of the same arguments from the habeas petition, (doc. 1), only now with the goal of imparting a sense of urgency to achieve a faster ruling on the merits of those same arguments. In the motion and

---

hand, the petitioner is arguing that he is likely to succeed on the merits at a later date to support his immediate argument for a temporary freeze of the status quo before a later assessment on the merits, that is properly cognizable as seeking a TRO.

briefing in support, he states that he seeks such a remedy to "release Petitioner from civil immigration custody . . . or in the alternative, provide Petitioner with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a)," (doc. 3-2 at 2), which directly echoes his repeated calls for such relief in his habeas petition, (doc. 1 at 52). He claims that the TRO will prevent the irreparable harm caused by mandatory civil detention without a bond hearing, (doc. 3-1 at 17), which is explicitly the relief he seeks in his habeas petition, (doc. 1 at 52). In his proposed order, when Vazquez asks for the court to direct Respondents to immediately release Petitioner or, alternatively, to produce him for a bond hearing, (doc. 3-2 at 2), he is really asking for "most or all of the substantive relief" sought by the habeas petition, which fundamentally means he is not seeking a TRO, *Fernandez-Roque*, 671 F.2d at 429; *Erazo*, 2025 WL 2879509, at *1.

The closest the motion comes to seeking a TRO for a proper purpose is when Vazquez states that he seeks a "Temporary Restraining Order to preserve the status quo" in order to "prevent Petitioner's removal, transfer outside this District, or other actions that would divest this Court of jurisdiction," (doc. 3 at 5). But there is one fact that makes Vazquez's arguments difficult to accept: Vazquez is no longer in the country. For this reason, "[t]o the extent [Vazquez] sought an individualized bond hearing, and/or release from his confinement pending deportation, the Court can no longer give [Vazquez] any meaningful relief." *Jokotade v. Whiddon*, No. 2:13-cv-

11

64-FTM-29DNF, 2015 WL 3440416, at *3 (M.D. Fla. May 28, 2015). *See also*

*Bonilla v. Noem*, No. 25-cv-62395, 2025 WL 3496193, at *3 (S.D. Fla. Dec. 5, 2025)

(holding that, while the court had jurisdiction to review the petitioner's wrongful

detention claims, the requested relief was effectively rendered moot as a result of a

Voluntary Departure Order). The court finds the holdings of *Jokotade* and *Bonilla*

persuasive and finds that, in this case, the relief Vazquez seeks from the court in his

TRO motion cannot be granted since he is neither in the custody of the Respondents

nor in the United States.

## IV.   CONCLUSION

In sum, Vazquez's petition for writ of habeas corpus "raises serious questions

that demand a prompt answer[,] [b]ut prompt does not mean instant," *Banjoko v.*

*Rambosk*, No. 2:26-cv-58, 2026 WL 145467, at *3 (M.D. Fla. Jan. 20, 2026), and he

has not met the extraordinarily high burden necessary for a temporary restraining

order. Therefore, the court does the following:

1.   **DENIES** Vazquez's motion, (doc. 3),

2.   **DENIES AS MOOT** Vazquez's motion for order to show cause in light

of the fact that he is no longer in Respondents' custody or the United States (doc. 4),

and

3.   **REFERS** the balance of Vazquez's case to the Magistrate Judge.

**DONE** and **ORDERED** on March 12, 2026.

                _____

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE